**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

UMS SOLUTIONS d/b/a UNIVERSAL IMAGING,       Docket No. 17-CIV-3119 (VSB)(SLC)

Petitioner,

    -against-

BRAD CORNELL,

Respondent.
-------------------------------------------------------------------X

**Petitioner/Judgment Creditor's Memorandum of Law In Opposition to**
**Respondent/Judgment Debtor's Motion to Vacate a Default**

Steven T. Sledzik, Esq.
The Morrison Law Firm, P.C.
445 Hamilton Avenue, Suite 402
White Plains, NY 10601
Tel.: (914) 239-3622
Fax: (914) 750-4028
ssledzik@morrisonlawfirmpc.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................ii

SUMMARY OF ARGUMENT.............................................................................1

STATEMENT OF FACTS..................................................................................1

ARGUMENT

POINT I
UNDER THE FAA, CORNELL'S REQUEST IS UNTIMELY AND LEGALLY DEFICIENT SO
HE HAS NOT SHOWN A MERITORIOUS DEFENSE OR GOOD CAUSE UNDER FRCP
RULES 55 AND 60.......................................................................................5

POINT II
CORNELL HAS NOT DEMONSTRATED GROUNDS TO VACATE THE ARBITRATION
AWARD UNDER THE FAA...............................................................................8

POINT III
PLAINTIFF HAS NOT DEMONSTRATED EXCUSABLE NEGLECT TO AVAIL HIMSELF
OF RELIEF UNDER FRCP RULES 60(b)(1) AND 55(b)......................................12

CONCLUSION...............................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Barclays Capital Inc. v. Hache*,
 No. 16 Civ. 315 (LGS), 2016 WL 3884706 (S.D.N.Y. July 12, 2016).......................7

*Brown v. Ionescu*,
 380 F. App'x 71 (2d Cir. 2010)....................................................................9

*Carcello v. TJX Companies, Inc.*,
 192 F.R.D. 61 (D. Conn. 2000)..................................................................12

*D.H. Blair & Co. v. Gottdiener*,
 462 F.3d 95 (2d Cir. 2006)..........................................................................6

*DeGrate v. Broad. Music, Inc.*,
 No. 12 Civ. 1700(RJS)(JLC), 2013 WL 639146 (S.D.N.Y. Feb. 20, 2013).................7

*Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*,
 333 F.3d 383 (2d Cir. 2003).....................................................................6-7

*Farmer v. United States*,
 No. 15-cv-6287 (AJN), 2017 WL 3448014 (S.D.N.Y. Aug. 9, 2017).......................9

*Florasynth, Inc. v. Pickholz*,
 750 F.2d 171 (2d Cir. 1984)........................................................................7

*Gucci America, Inc. Guess?, Inc., v. Gold Center Jewelry*,
 158 F.3d 631 (2d Cir. 1998).....................................................................16

*Guererro v. FJC Security Services, Inc.*,
 Nos. 12 Civ. 5763(SHS), 13 Civ. 1204(SHS), 2013 WL 5273795 (S.D.N.Y. Sep. 18, 2013)...................................................................................................10

*Karppinen v. Karl Kiefer Mach. Co.*,
 187 F.2d 32 (2d Cir. 1951).....................................................................9, 10

*Klein v. Williams*,
 144 F.R.D. 16 (E.D.N.Y. 1992)..................................................................13

*Landy Michaels Realty Corp. v. Local 32B-32J*,
 954 F.2d 794 (2d Cir. 1992)........................................................................7

*Nemaizer v. Baker*,
 793 F.2d 58 (2d Cir. 1986)..........................................................12, 13, 16

*Oxford Health Plans LLC v. Sutter,*
    569 U.S. 564 (2013)……………………………………………………………………6

*Pioneer Inv. Servs., Inc. v. Brunswich Assocs. Ltd. P'ship,*
    507 U.S. 380 (1993)………………………………………………………………...13

*Pointdujour v. Mount Sinai Hosp.,*
    121 F. App'x 895 (2d Cir. 2005)…………………………………………………..9

*Polin v. Kellwood Co.,*
    103 F.Supp.2d 238 (S.D.N.Y. 2000)……………………………………………...9

*Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC,*
    497 F.3d 133 (2d Cir. 2007)…………………………………………………………6

*Pruitt v. Kirkpatrick,*
    No. 16-CV-2703, 2017 WL 4712225 (S.D.N.Y. Oct. 18, 2017)………………………9

*ReliaStar Life Ins. Co. of N.Y. v. EMC Nat. Life Co.,*
    564 F.3d 81 (2d Cir. 2009)………………………………………………………...6

*Rich v. Spartis,*
    516 F.3d 75 (2d Cir. 2008)………………………………………………………...6

*Salzman v. KCD Fin., Inc.,*
    No. 11 Civ. 5865(DLC), 2011 WL 6778499 (S.D.N.Y. Dec. 21, 2011)………………….9

*Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.,*
    559 U.S. 662 (2010)……………………………………………………………………6

*United States v. Radin,*
    No. S1 16 Cr. 528 (HBP), 2017 WL 2226595 (S.D.N.Y. May 22, 2017)………………...9

*Wallace v. Buttar,*
    378 F.3d 182 (2d Cir. 2004)…………………………………………………………6

*Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.,*
    103 F.3d 9 (2d Cir. 1997)………………………………………………………6, 9

**Statutes**

Federal Arbitration Act, 9 U.S.C. § 9……………………………………………………..6

Federal Arbitration Act, 9 U.S.C. § 10……………………………………………..6, 9, 11

Federal Arbitration Act, 9 U.S.C. § 11……………………………………………………6

Federal Arbitration Act, 9 U.S.C. § 12……………………………………………………7

**Rules**

Fed. R. Civ. P. 4…………………………………………………………………………...3

Fed. R. Civ. P. 5(a)(2)……………………………………………………………………..3

Fed. R. Civ. P. 5(b)(2)(c)………………………………………………………………….3

Fed. R. Civ. P. 55(b)……………………………………………………………………..12

Fed. R. Civ. P. 56(c)(2)…………………………………………………………………..14

Fed. R. Civ. P. 60………………………………………………………………………...12

Fed. R. Civ. P. 60(b)(1)…………………………………………………………………..12

Fed. R. Evid. 613………………………………………………………………………...14

Fed. R. Evid. 801(d)(2)…………………………………………………………………..14

Fed. R. Evid. 801(c)……………………………………………………………………...14

Fed. R. Evid. 802………………………………………………………………………...14

ICDR Rules - https://www.adr.org/sites/default/files/ICDR_Rules.pdf, Article 10(1)…………...2

ICDR Rules - https://www.adr.org/sites/default/files/ICDR_Rules.pdf, Article 23(4)…………...2

ICDR Rules - https://www.adr.org/sites/default/files/ICDR_Rules.pdf, Article 26………………3

**Miscellaneous**

Modern Federal Jury Instructions, 76-1…………………………………………………14

## SUMMARY OF ARGUMENT

In the Fall of 2015 and the Spring of 2016, Respondent/Judgment Debtor Brad Cornell, a former independent sales representative of Petitioner/Judgment Creditor, UMS Solutions d/b/a Universal Imaging ("UMS") began working for its competitor and misappropriated several hundred thousand dollars of business opportunities from UMS. (Dkt No 1-7, ¶35)  Pursuant to its Agreement with Cornell, UMS instituted an Arbitration in New York for breach of contract, among other things, and obtained an award totaling more than $325,000[1] plus interest.  UMS confirmed the Award in this Court and a Judgment was issued in its favor against Cornell in April 2019.

Despite notice and multiple opportunities to do so, Cornell participated in none of the proceedings. But he now seeks the vacate the Judgment.  However, he fails to show any excusable neglect to vacate the award; in fact, his sole reason for this repeated non-participation was that he was relying on alleged erroneous legal advice.  Similarly, his motion seeks *de novo* review of the Award but fails to meet his high burden of proof of demonstrating that the Award was procured by fraud so as to justify vacating the Judgment.  His defense is barred by the relevant statute of limitations under the Federal Arbitration Act ("FAA"), and as such they are not meritorious.  His motion should be denied as a matter of law.

## STATEMENT OF FACTS

UMS is a New York based company that sells, installs and services human and veterinary digital radiography and ultrasound diagnostic equipment throughout the United States and in several foreign countries, including Canada.  Under an Agreement between them, it retained Cornell, a Canadian, as its independent sales representative in December 2014. (Dkt Nos 1-1 to

---

[1] All monetary figures are in U.S. dollars.

1.5) The relationship broke down and ended in late 2015 and early 2106, when Cornell began working for a competitor and misappropriated UMS's business opportunities by shifting them to that competitor, among other things.

More than three and one-half years ago, on March 31, 2016, Petitioner/Judgment Debtor, UMS filed a Demand for Arbitration with the American Arbitration Association ("AAA"). As the matter involved a New York based company (UMS) and Respondent/Judgment Debtor, Cornell, a Canadian citizen, AAA assigned the matter to its International Center for Dispute Resolution ("ICDR"). The Demand was sent to Respondent by email, facsimile and international courier. Under the ICDR Rules, personal service of arbitral documents is not required. (https://www.adr.org/sites/default/files/ICDR_Rules.pdf, Article 10(1)).

By emails to ICDR from Cornell, dated April 22, 2016 and April 30, 2016, he acknowledged receipt of the Demand for Arbitration. (Declaration of Steven T. Sledzik, dated October 8, 2019, submitted herewith ("Sledzik Declaration") Ex 1) Cornell also corresponded with the ICDR by letter dated May 16, 2016, in which he acknowledged receipt of correspondence from ICDR related to the Demand. (*Id*. Ex 2) Other than these communications to ICDR, Cornell never filed an Answer/Response/Reply to the Demand for Arbitration, never participated in telephone communications regarding the Arbitration, nor appeared at the Arbitration. He never requested more time to obtain counsel or to proceed with the Arbitration.

On November 16, 2016, UMS submitted a Supplemental Statement Regarding Demand for Arbitration detailing its claims. On December 29, 2016, UMS served its witness statements and exhibits on Cornell and the ICDR. Under the ICDR Rules, witness statements are submitted pre-Arbitration and the witnesses still testify at the Arbitration. (https://www.adr.org/sites/default/files/ICDR_Rules.pdf, Article 23(4)). On January 26, 2017, the

2

Arbitration was convened and held before ICDR Arbitrator Carlos Bianchi, Esq. On that date, Arbitrator Bianchi heard an opening statement, witness testimony and closing statements on behalf of UMS. Cornell failed to appear at the Arbitration, despite notice of the same. UMS introduced numerous exhibits, which were accepted into evidence by Arbitrator Bianchi. On February 17, 2017, UMS submitted its post-hearing Memorandum. On March 10, 2017, UMS submitted an additional Affirmation regarding its attorneys' fees and costs.

Under the ICDR Rules, Arbitrators may issue judgments against non-appearing parties. (https://www.adr.org/sites/default/files/ICDR_Rules.pdf, Article 26) On April 21, 2017, Arbitrator Bianchi issued his Award in the case. (The Award is annexed to the Petition, Dkt No 1, as Exhibit 2.) Arbitrator Bianchi awarded UMS: (1) $259,301.17 for damages and $45,945.97 for attorneys' fees; (2) $19,868.00 for its fees and expenses; (3) interest on the $259,301.17 from September 1, 2016 on the amount from time to time outstanding, at the rate of 15%, until full payment is made by Cornell.

Approximately two and a half years ago, by Notice of Petition and Petition, dated April 27, 2017, the instant action was commenced to confirm the Arbitration Award under the FAA. (Dkt No 1) The Notice of Petition, Petition and Exhibits were personally served on Cornell on August 2, 2017 through the Canadian/British Columbian Ministry of Justice under local law, in accordance with the Hague Convention.[2] (Dkt No 2) According to the Affidavit of the Service, Cornell

---

[2] Under the Federal Rules of Civil Procedure, personal service is required only to obtain or establish jurisdiction over a party and is only *per se* required for initiating documents, i.e. Petitions or Complaints. (FRCP Rule 4) Once jurisdiction has been established, mail service is sufficient thereafter. (FRCP Rule 5(b)(2)(c)) There is no requirement to serve post-initiation papers on a party that fails to appear and is in default. (FRCP Rule 5(a)(2)) Notwithstanding, every document UMS filed in this action was served upon Cornell. (Dkt Nos. 5, 12, 14, 21)

personally picked up the paperwork at the Sheriff's Office of a Provincial Court, identifying himself with his local driver's license. (*Id.* at p. 3.)

On October 4, 2017, the Clerk of this Court certified that Cornell was in Default. (Dkt No 7) On October 5, 2017, an Order to Show Cause seeking a Default Judgment was filed. (Dkt No 8) There were issues with the return date and an Amended Order to Show was filed. (Dkt Nos 9 and 10) On December 27, 2019, the Amended Order to Show Cause with supporting documents were personally served by the Richmond Sheriff's Department of the Provincial Court on Mr. Cornell at his home, and he again identified himself with his local driver's license. (Dkt No 14)

On February 26, 2018, the Court referred this matter to Magistrate Pitman to report and recommend as to a dispositive Motion for Summary Judgment under FRCP Rule 56. (Dkt No 15) By Order dated March 9, 2019, Magistrate Pitman converted the Order to Show Cause for a Default Judgment into a Motion for Summary Judgment and permitted Plaintiff to submit opposition by April 9, 2019. (Dkt No 17) According to the Order, Magistrate Judge Pitman's chambers mailed it to Cornell at his home address. (*Id.*)

Cornell acknowledged timely receipt of this Order, but, without excuse, he admits that he did not initially open or read it and then took no action in response to it once he finally actually read it. (Sledzik Declaration, Ex 3 ¶¶10-11) As described by Cornell himself (through Vancouver counsel), he received Pitman's March 9 Order *before* the April 9, 2019 deadline to submit opposition papers to the then-converted Motion for Summary Judgment, but only bothered or managed to read it sometime *after* the deadline. (*Id.*)

Cornell never appeared in this action (until last month, almost six-moths post-judgment), never opposed the Motion for Summary Judgment or asked for more time to respond or seek counsel. On November 6, 2018, Magistrate Pitman recommended that Judgment be entered in

4

favor of UMS. (Dkt No 22) According to the Report and Recommendation, Magistrate Pitman's chambers mailed it to Cornell at his home address. (*Id.*) The Report and Recommendation also noted that Cornell had fourteen days from receipt of it to object to it. (*Id.*)

Cornell failed to object to the Report and Recommendation. Five months later, on April 11, 2019, the Court adopted the Report and Recommendation and directed that Judgment be entered. (Dkt No 24) On April 12, 2019, the Clerk issued a Judgment in favor of UMS in the amount of $325,115.14, plus interest on $259,301.17 of it from September 1, 2016, until paid in full, attorneys' fees of $10,077.50, and costs of $400.

On May 16, 2019, the Clerk of the Court certified that no Notice of Appeal had been filed and the time for the same had lapsed. (Dkt No 027)   On June 3, 2019, UMS instituted a Civil Claim in the Supreme Court for British Columbia, Vancouver Registry, to domesticate the Judgment and begin its collection.   Cornell has answered the Claim (Ex 3 Sledzik Declaration) and discovery is commencing, although Cornell has already failed to meet deadlines to comply with discovery obligations.   (See Ex 4 to Sledzik Declaration)

## ARGUMENT

### POINT I
### UNDER THE FAA, CORNELL'S REQUEST IS UNTIMELY AND LEGALLY DEFICIENT SO HE HAS NOT SHOWN A MERITORIOUS DEFENSE OR GOOD CAUSE UNDER FRCP RULES 55 AND 60

Cornell's motion to vacate the judgment can be denied as it fails to meet the high standard for vacating arbitration awards under the FAA. In presenting previously unpresented evidence to this Court with the Cornell Affidavit, Cornell is seeking *de novo* review of the more than two-and a half year-old Arbitration Award, grounds alone for denial of his motion.   Finally, under the FAA, Cornell's request is untimely by almost two years, and can be denied on those grounds alone.

5

The FAA, 9 U.S.C. §§9–11, provides expedited judicial review to confirm, vacate, or modify arbitration awards. Under FAA §9, a court "must" confirm an award "unless" it is vacated, modified, or corrected "as prescribed" in §§10 and 11 of the Act.

A petition brought under the FAA is "not an occasion for *de novo* review of an arbitral award." *Wallace v. Buttar,* 378 F.3d 182, 189 (2d Cir. 2004). A court's review of an arbitration award is instead "severely limited," *ReliaStar Life Ins. Co. of N.Y. v. EMC Nat. Life Co.,* 564 F.3d 81, 85 (2d Cir. 2009), so as not to frustrate the "twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation," *Rich v. Spartis,* 516 F.3d 75, 81 (2d Cir. 2008). The Second Circuit "has repeatedly recognized the strong deference appropriately due arbitral awards and the arbitral process, and has limited its review of arbitration awards in obeisance to that process." *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC,*497 F.3d 133, 138 (2d Cir. 2007). Therefore, in order to obtain vacatur of the decision of an arbitral panel under the FAA, a party "must clear a high hurdle." *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.,* 559 U.S. 662 (2010); *see also Wallace, supra* at 189 (referring to the "heavy burden" on the party seeking vacatur under the FAA).

"Under the FAA, courts may vacate an arbitrator's decision only in very unusual circumstances." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013). "Normally, confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 104, 110 (2d Cir. 2006). A party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high. *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.,* 103 F.3d 9, 12 (2d Cir. 1997); *see also Duferco Int'l Steel Trading*

6

*v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003) ("It is well established that courts must grant an [arbitrator's] decision great deference."). Indeed, "an arbitration award should be enforced, despite a court's disagreement with it on the merits, if there is 'a barely colorable justification for the outcome reached.'" *Landy Michaels Realty Corp. v. Local 32B-32J*, 954 F.2d 794, 797 (2d Cir. 1992) (*quoting Andros Compania Maritima, S.A. v. Marc Rich & Co.*, 579 F.2d 691, 704 (2d Cir. 1978)).

The FAA provides that "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. §12. The statute's three-month time limit for service is absolute: "No exception to [the] three month limitations period is mentioned in [9 U.S.C. §12]. Thus, under its terms, a party may not raise a motion to vacate, modify, or correct an arbitration award after the three month period has run[.]" *DeGrate v. Broad. Music, Inc.*, 2013 WL 639146 *3 (S.D.N.Y. 2013) (*quoting Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 175 (2d Cir. 1984)); *accord Barclays Capital Inc. v. Hache*, 2016 WL 3884706 *2 (S.D.N.Y. 2016) ("[T]he three-month deadline contained in 9 U.S.C. §12 is not subject to extension."). Because arbitration is designed to afford parties a prompt resolution of their dispute, delayed challenges to the validity of an award are disfavored. *Florasynth,* 750 F.2d at 176-177(citing cases). It is well-settled that under FAA §12, a party may not raise a motion to vacate, modify, or correct an arbitration award after the three-month period has run, even when raised as a defense to a motion to confirm. *Id.* at 175.

Cornell's alleged basis to vacate the Judgment under FRCP Rules 55 and 60 is that he has meritorious defenses, but in order to put them forth to the Court, he requires the Court to engage in a *de novo* review of the Award. Cornell's motion to vacate the Arbitration Award would require

this Court to make a complete *de novo* comparison of two factual versions of events and put itself in the position of second-guessing the Arbitrator and disturbing his Award.

Cornell's motion is based solely on his Affidavit which is nothing more than an attempt to deny and contradict the written testimony of Peter Brunelli and Larry Riley[3] (the President and co-owner of a non-party Horizon Medical Services, Inc. ("Horizon")) upon which, among other things, the Arbitrator relied. Under the FAA's three-month deadline to vacate arbitration awards, Cornell should have presented this information to the Court by November 2, 2017 (three months after he received the award that had been served on him on August 2, 2017 (Dkt No 2)) and he cannot now circumvent that statute of limitations by seeking to vacate the Judgment  into which the Award was converted.

Cornell's motion to vacate the judgment is an untimely attempt to make an end run around the statute of limitations set forth in the FAA and can be denied on this basis alone. Further, it seeks an almost limitless *de novo* review of the Arbitration Award and to have this Court substitute its judgment for that of the Arbitrator. The motion should be denied as a matter of law.

## POINT II
## CORNELL HAS NOT DEMONSTRATED GROUNDS TO VACATE THE ARBITRATION AWARD UNDER THE FAA

Cornell's motion fails to demonstrate critical elements to vacate an arbitration award that was purportedly procured by fraud because: (1) the evidence purporting to show fraud was and has been in Cornell's possession for years; (2) other than through mere contradiction it does not offer abundantly clear proof of fraud; and (3) he has not shown the materiality of the alleged fraud nor that the Award was procured by it. The motion should be denied because of these deficiencies.

---

[3] Mr. Riley is erroneously referred by both Cornell and his counsel as "Larry Reilly", "Peter Reilly" and "Peter Riley."

A party moving to vacate an Arbitration Award has the burden of proof, and the showing required to avoid confirmation is very high. *Willemijn, supra* p. 12. Under §10(a)(1) of the FAA, courts may vacate an arbitration award which "was procured by corruption, fraud or undue means." 9 U.S.C. §10(a)(1). [4]  In order to vacate an award on those grounds, the Second Circuit Court of Appeals has held that it must be "abundantly clear" that the award was the product of fraud, corruption, or undue means. *Karppinen v. Karl Kiefer Mach. Co.,* 187 F.2d 32, 34 (2d Cir.1951); *see also Polin v. Kellwood Co.,* 103 F.Supp.2d 238, 256 (S.D.N.Y. 2000) (*citing Karppinen's* "abundantly clear" standard). Although the Second Circuit has yet to articulate a test for vacating pursuant to § 10(a)(1), "courts in this district have found that the party challenging the award must show that '(1) [its] adversary engaged in fraudulent activity; (2) the petitioner could not, in the exercise of due diligence, have discovered the alleged fraud prior to the award; and (3) the alleged fraud materially related to an issue in the arbitration.' " *Salzman v. KCD Fin., Inc.,* 2011 WL 6778499 *3 (S.D.N.Y. 2011) (*quoting McCarthy v. Smith Barney, Inc.,* 58 F.Supp.2d 288, 293 (S.D.N.Y. 1999)).  Even where an arbitrator had mistakenly relied on false

---

[4] In his moving papers, other than the conclusory allegation of fraud, Cornell presents no legal argument *specifically citing or applying the FAA*.  His claims are also barred by the relevant statute of limitations.  As such, he has not shown a meritorious defense.  Further, he fails to meet his burden of proof and make the required showing that the alleged "fraudulent" statements of Brunelli and Riley were material to the arbitration award.   Generally, new arguments cannot be asserted for the first time in reply papers and arguments first made in reply should not be considered. *Brown v. Ionescu,* 380 F. App'x 71, 72 n.1 (2d Cir. 2010); *Pointdujour v. Mount Sinai Hosp.,* 121 F. App'x 895, 896 n.1 (2d Cir. 2005); *Pruitt v. Kirkpatrick,* 2017 WL 4712225 *3 n.2 (S.D.N.Y. 2017); *Farmer v. United States,* 2017 WL 3448014 *2 (S.D.N.Y. 2017); *United States v. Radin,* 2017 WL 2226595 *4 (S.D.N.Y. 2017).  In a similar vague and conclusory way, Cornell suggests service may not have been valid upon him and also that he has unspecified claims against UMS.  Notably, no counterclaims on behalf of Cornell were ever made before the ICDR, and, as such, the Arbitrator did not consider or rule as to them and they are not properly before this Court.

facts provided by a party, that would not be a ground upon which the arbitration award should be vacated. *Guererro v. FJC Security Services, Inc.*, 2013 WL 5273795 * 6 (S.D.N.Y. 2013)(mistakes of fact or arbitrary determinations are not grounds to vacate listed in 9 U.S.C. § 10).

In *Karppinen*, the parties arbitrated the issue of whether two buyers could rescind the purchase of an industrial canning machine that allegedly did not work properly. *Karppinen*, 187 F.2d at 33. Before the arbitrators, the sellers argued that the buyers wanted to rescind, not because something was wrong with the canning machine, but "because they wished to buy a cheaper machine of a lower productive capacity." *Id.* The buyers refuted that theory through testimony averring that the buyers had already purchased another canning machine with greater capacity at a higher price, and submitted a purchase order for the new machine to the arbitrators. *Id.* The arbitrators granted the buyers' request to rescind. *Id.* The sellers then sought to vacate the award based on alleged perjury. Specifically, the sellers argued the testimony regarding the purchase of the alternate canning machine was untrue and the purchase order false. *Id.* at 34.

The panel in *Karppinen* upheld the district court's decision to confirm the arbitration award, explaining that:

> the bearing of the price of the [replacement canning] machine on the issues before the arbitrators is extremely remote.... The price paid by the purchasers for some other machine had no bearing on the real issues before the arbitrators and cannot reasonably be thought to have affected their decision in determining any relevant questions before them. At most it could only bear on a possible impeachment of [the affiant] as to collateral matters, and he was subjected at the hearing below to an elaborate and inconclusive examination by appellant regarding the price of the [replacement canning] machine.

*Id.* at 35. Thus, *Karppinen* requires that a showing of materiality requires some nexus between the alleged perjury and the arbitration award.

10

Cornell's Affidavit, as it purports to raise issues of fraud, consists of little more than blanket denials of the brief written statements made UMS's Peter Brunelli and Horizon's Larry Riley (a non-party) and fails to meet the "abundantly clear" standard showing fraud. Notably, both Messrs. Brunelli and Riley also gave testimony at the Arbitration itself for several hours which was relied upon by the Arbitrator in rendering his Award. Cornell makes no reference to that testimony or any rebuttal to it, he solely purports to rebut the Brunelli and Riley affidavits submitted pre-Arbitration. Further, Mr. Cornell has not met his burden of proof to show the materiality of his new allegations as they specifically relate to the Award, rather he merely conclusorily states that they show fraud.

Cornell's newly presented alleged evidence of fraud is based upon information solely within his custody and control. He cannot demonstrate a required element of FAA §10 and *Salzman* that he could not, in the exercise of due diligence, have discovered the alleged fraud prior to the Award.

Further, his statements on his which his claim of fraud are based were never presented to the Arbitrator. Thus, the Award was not "procured by fraud" (FAA §10(a)(1)), as the Arbitrator did not render it with both knowledge of and ignorance to the purported contradictions now alleged by Cornell.

Within the conduct of an Arbitration, the statements in Cornell's Affidavit related to his fraud claim also would have been subject to cross-examination and impeachment. At the Arbitration, UMS also would have had the opportunity to rebut and reply to these new allegations of Cornell with its own witnesses as well as with third party witnesses. However, Cornell, only now coming forward with these claimed facts, has taken away UMS's opportunity to respond and rebut them as the Arbitration would have allowed.

11

Finally, the purported facts Cornell newly presents into this post-judgment proceeding, if they had been presented to the Arbitrator would not in and of itself have resulted in Cornell prevailing.  Notably, presented with two alternative versions of any fact, the Arbitrator would have to make an assessment of the credibility of the witnesses and make a finding of fact thereafter.  However, only coming forward now with these claimed facts has taken away this critical element of the fact finding and truth-seeking process.

Cornell's denial-based affidavit contains knowledge that has been available to him *for years* that he is only now coming forward with at the thirteenth hour.  It does not meet the abundantly clear proof of fraud to justify vacating the arbitration award and judgment.  As it fails to meet the required standards under the FAA for which he has the burden of proof, Cornell's motion to vacate the judgment must be denied as a matter of law.

## POINT III
### PLAINTIFF HAS NOT DEMONSTRATED EXCUSABLE NEGLECT TO AVAIL HIMSELF OF RELIEF UNDER FRCP RULES 60(b)(1) AND 55(b)

Cornell has failed to demonstrate excusable neglect so as to entitle himself to relief under FRCP Rule 60.  Further, his neglect is so extreme as to be willful so as not to entitle him to relief under FRCP Rule 55(b).

The negligence of a party's attorney is insufficient grounds for relief under Rule 60(b)(1). *See Nemaizer v. Baker*, 793 F.2d 58, 62 (2d Cir. 1986).  "[A]n attorney's actions, whether arising from neglect, carelessness or inexperience, are attributable to the client, who has a duty to protect his own interests by taking such legal steps as are necessary.  To rule otherwise would empty the finality of judgments rule of meaning." *Id.* (citing *Ackerman v. United States*, 340 U.S. 193, 197-98, (1950)); *see also Carcello v. TJX Companies, Inc.*, 192 F.R.D. 61, 65 (D. Conn. 2000) ("[A] client makes a significant decision when he selects counsel to represent him. Once this selection has been made, the client cannot thereafter avoid the

consequences of that counsel's negligence. Rather, his recourse is limited to starting anew, assuming the statutes of limitations and other applicable laws permit, or pursuing a negligence action against counsel."; *Klein v. Williams*, 144 F.R.D. 16, 18 (E.D.N.Y. 1992) (noting that "[a] client is not generally excused from the consequences of his attorney's negligence, absent a truly extraordinary situation.") Moreover, "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect.'" *Pioneer Inv. Servs., Inc. v. Brunswich Assocs. Ltd. P'ship*, 507 U.S. 380, 391-92 (1993). "[T]his is because a person who selects counsel cannot thereafter avoid the consequences of th[at] agent's acts or omissions." *Nemaizer*, 793 F.2d at 62(citing *Link v. Wabash*, 370 U.S. 626, 633-34 (1962)).

13

Cornell's excusable neglect claim as to the default in this action[5] rests only alleged advice[6] he claimed to have received from an unidentified "well-regarded" Canadian attorney.    He purportedly was advised in May 2017 that "there was no reason to be concerned about the award, as . . .. [Cornell's] presence outside of the United States made its enforcement against [him] . . . exceedingly difficult . . . [F]rom a procedural standpoint, the proper time to challenge UMS's allegations would arise when and if UMS attempted to enforce the award in Canada."  (Cornell Aff., Dkt No 33, ¶¶39, 40) Cornell states he "was ultimately convinced by my legal counsel that there was nothing to be gained by challenging UMS's Arbitration Award in the United States or by participating in subsequent American court proceedings." (*Id.* ¶41) The advice Cornell received has obviously turned out to be inaccurate and after three-and-one-half years of this matter, he has

---

[5] As to his failure to attend the Arbitration, Mr. Cornell is now telling this Court in a sworn statement that it was because "his father was terminally ill." (Cornell Aff. ¶37)  However, he told the ICDR in a May 16, 2017 letter to it that he could not attend the Arbitration because he was "the primary care giver of both an unwell child and an elderly grandparent," omitting reference to the supposed compelling and memorable terminally ill father he is now saying he was caring for at the time. (*See* Ex 2 to Sledzik Declaration; *see also* FRE 613, 801(d)(2).  *see generally,* Modern Federal Jury Instructions, 76-1 ("If you find a particular witness has testified falsely in any one material part of his . . . testimony, you may look with distrust upon the other evidence given by that witness.    And if you find that any witness testified in a manner that is willfully and intentionally false, you may disregard all evidence given by that witness or you may accept that part you do believe and disregard the party you believe is false.")).  This alleged caregiving appears not to have gone on the entire three and one-half years of these proceedings so as to constitute a basis for the excusable neglect argument in Cornell's motion as it relates to this federal litigation

Also, according to Mr. Cornell's emails to the ICDR at the outset of the Arbitration there, at the time he received the Demand for Arbitration (April 2016), he contacted a Canadian law firm that had "relations in the States." (*See* Ex 1 to Sledzik Declaration.) Inexplicably, he also said "being a Canadian resident trying to find a lawyer licensed in New York is not a simple task." *Id.* According to his LinkedIn profile, Cornell claims to have a post-secondary education and is an experienced businessman/manager and is Six Sigma-trained, his sophistication makes his claims of excusable neglect ring false.    (*See* Ex 6 to Sledzik Declaration.)

[6] The statements purportedly made by Cornell's unidentified Canadian attorney to Cornell are inadmissible hearsay.  FRE 801(c), 802; *see also* FRCP Rule 56(c)(2)(evidence in support of motion for summary judgment must be in admissible form).

14

begun to participate six months in it after the Judgement against him was entered to attempt to prevent the Vancouver enforcement action from proceeding despite the lack of the stay  of this matter.  (*See* Exhibit 5 to Sledzik Declaration)

Magistrate Pitman *converted* the Order to Show Cause (Dkt No 8) that had been personally served on Cornell on December 27, 2017 (Dkt No 14) into a Motion for Summary Judgment. Magistrate Pitman did *not* require UMS to submit any more or other papers in support of the Motion for Summary Judgment.  (Dkt No 17) Cornell's claim that he "never" or did not timely receive the motion papers (Cornell Aff. ¶¶45 and 46, Memorandum of Law pp. 7-9, 12-13) is factually inaccurate and a blatant misrepresentation.  According to the Affidavit of Service of the Richmond Sheriff's Office, the Order to Show Cause (converted into the moving papers by Pitman) were personally served on Cornell on December 27, 2017 (Dkt No. 14); Judge Pitman's Report and Recommendation was issued November 6, 2018.  Moreover, directly contracting Cornell and his counsel's insinuations in this matter on this motion, in his answer to the Vancouver domestication proceeding, Cornell admitted he received the papers in support of the application for a default judgment.  (Ex 3 to Sledzik Declaration at ¶7) Plaintiff had almost *a year* to do something, anything, related to the motion, before it was decided, and he *failed to do so.*

Cornell acknowledged timely receipt of Magistrate Pitman's Order converting the Order to Show Cause into a Motion for Summary Judgment and setting a time by which Cornell needed to submit opposition. (Sledzik Declaration, Ex 3 ¶¶10-11) However, he admits that he did not initially open or read it and then took no action in response to it once he finally actually read it. (*Id.*) As described by Cornell himself (through Vancouver counsel), he received Pitman's March 9 Order *before* the April 9, 2019 deadline to submit opposition papers to the then-converted Motion for Summary Judgment, but only bothered or managed to read it sometime *after* the deadline.  (*Id.*)

15

Cornell's arguments of excusable neglect and "good cause" are directly undercut by the extreme willfulness of his deliberate choice to ignore court documents and his failure to respond to notice and process or seek more time for the same.  His actions are a deliberate decision to default in both the Arbitration and this action.  On its relevant facts, this case is indistinguishable from *Gucci America, Inc. Guess?, Inc., v. Gold Center Jewelry,* 158 F.3d 631, 634-35 (2d Cir. 1998), a case cited by Cornell, that failed to vacate a default judgment because of the willfulness of the neglect of the Respondents.  Cornell never once - personally or through his attorneys- sought clarification of any obligation or deadline required of him nor did he ever seek more time at any point in either proceeding.  He put his head in the sand for more than three and a half years; he should not now be permitted to avoid his responsibility by feigning ignorance or suggesting unfairness.

Under *Nemaizer*, attorney negligence/bad advice does not constitute excusable neglect.  As Cornell's motion to vacate the judgment under FRCP Rules 55 and 60 has failed to demonstrate excusable neglect for his default, his motion must be denied as a matter of well-settled law.

## CONCLUSION

For the reasons set forth herein, the Motion to Vacate the Default Judgment should be denied in its entirety, and this Court should afford Petitioner/Judgment Debtor UMS any such other relief it deems just and necessary.

Further, the Independent Sales Contractor Agreement between UMS and Cornell (Dkt No 1-3, p. 10, ¶13.4), which the Arbitrator found was breached by Cornell, permits UMS to recover its attorneys' fees for the enforcement of the Agreement.  Indeed, the Arbitrator, Magistrate Pitman and this Court have awarded UMS its attorneys' fees. (Dkt. Nos. 1.7, p. 12, ¶38, 22 at pp. 10-14, 24 at p. 3, and 25) UMS respectfully requests leave to make an application for its attorneys' fees

16

as to its opposition to this motion should the Court deny it.

Dated:   October 8, 2019
      White Plains, New York

                        MORRISON LAW FIRM, P.C.


                        By:/s/ Steven T. Sledzik
                        Steven T. Sledzik (SS 8869)
                        445 Hamilton Avenue, Suite 402
                        White Plains, New York 10601
                        (914) 239-3622
                        ssledzik@morrisonlawfirmpc.com
                        Attorneys for Petitioner/Judgment Debtor UMS

17